IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| NATALYA BEZMENOVA, | |
| Plaintiff, | |
| v. | Civil Action No. 8:13-cv-00003-AW |
| OCWEN FINANCIAL CORPORATION et al., | |
| Defendants. | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Natalya Bezmenova is a natural person who resides at 409 Christopher Avenue, #33, Gaithersburg, Maryland 20879 (the Property). The record indicates that two other individuals named Anton Bezmenova and Leonid Finkelshteyn are co-owners of the Property *See* Doc. No. 23-2 at 11; Doc. No. 23-4 at 6. Plaintiff did not join Bezmenova and Finkelshteyn as Parties. Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (Defendants) are corporate entities that operate as mortgage lenders and servicers.

Before May 2011, a company named Saxon serviced Plaintiff's home loan. Plaintiff fell behind on her mortgage payments. Saxon allegedly offered Plaintiff a Trial Period Plan (TPP) loan modification through the Home Affordable Modification Program (HAMP). Plaintiff alleges that Saxon violated the terms of their TPP. Plaintiff vaguely alleges that Saxon

1

incorrectly asserted that Plaintiff failed to make her TPP payments in accordance with the TPP's terms. Therefore, on September 20, 2010, Plaintiff sued Saxon in state court.

In March/April 2011, Plaintiff alleges that she and Saxon entered into a settlement agreement. The record reflects that Plaintiff and Finkelshteyn, but not apparent co-owner Anton Bezmenova, signed a document titled Confidential Settlement Agreement and General Release (March 22 Agreement). Doc. No. 23-2 at 6–7. Saxon does not appear to have countersigned the March 22 Agreement. *See id.* at 6.

The March 22 Agreement incorporates by reference a document titled Loan Modification Agreement and associated documentation. *See id.* at 1, 9. The record reflects that Plaintiff and Finkelshteyn, but not apparent co-owner Anton Bezmenova, signed the Loan Modification Agreement and associated documentation. Saxon does not appear to have countersigned the Loan Modification Agreement or associated documentation. In pertinent part, Section 3 of the Loan Modification Agreement states that Plaintiff agrees to pay the home loan in accordance with the following payment schedule:

| Interest Rate | Interest Rate Change Date | Payment Due Date | Monthly Principal & Interest Payment |
|---|---|---|---|
| 9.35% | 08/01/2009 | 09/01/2009 | $1,982.55 |
| 3.00% | 02/01/2011 | 03/01/2011 | $1,054.48 |
| 4.00% | 02/01/2016 | 03/01/2016 | $1,196.04 |

*Id.* at 10. The Loan Modification Agreement also states that "[t]he monthly principal and interest payment will remain $1,494.18 until the loan is paid in full." *Id.*

Plaintiff alleges that she submitted the March 22 Agreement to Saxon. The record reflects that, on or around March 23, 2011, Saxon countersigned the March 22 Agreement. *See* Doc. No. 23-4 at 6. For clarity's sake, the Court refers to the countersigned March 22 Agreement as the "March 23 Agreement." The March 23 Agreement likewise incorporates the Loan Modification Agreement. Section 2 of the March 23 Agreement states that, "[n]o later than March 25, 2011, . . . **Borrowers** . . . promise . . . to fully and properly execute and deliver two (2) counterparts of each Loan Modification Document to Saxon's counsel . . . ." Doc. No. 23-4 at 2 (emphasis added). Section 2 further provides that "[i]n the event Borrowers fail to deliver the properly executed and notarized . . . **Loan Modification Documents** to Saxon's counsel on or before the Deadline . . . Saxon may elect to withdraw the offer to modify the Loan, . . . thereby nullifying this Agreement." *Id.* (emphasis added). The March 23 Agreement defines "Borrowers" to include Anton Bezmenova, the co-owner who evidently failed to sign the March 23 Agreement. Doc. No. 23-4 at 1. Furthermore, the March 23 Agreement defines the "Loan Modification Documents" to include the Loan Modification Agreement and associated documentation. *Id.* § 1, at 1.

On April 1, 2011, Saxon asked Plaintiff to resign the March 23 Agreement. Doc. No. 23-5. Saxon asserted, and the record reflects, that Plaintiff had signed her name for apparent co-owner Anton Bezmenova. Plaintiff alleges, and the record reflects, that she reexecuted the March 23 Agreement in accordance with Saxon's instructions and delivered it to Saxon on or about April 4, 2011. *See* Doc. No. 7-4. The Court refers to the agreement that Plaintiff executed on April 4, 2011 as "the April 4 Agreement." Saxon did not countersign the April 4 Agreement. Plaintiff does not allege whether she started making payments after late March/early April 2011 and, if so, in what amount.

3

In May 2011, Plaintiff alleges that Saxon assigned its "servicing responsibilities" of Plaintiff's home loan to Defendants. Defendants previously submitted evidence purporting to prove that Plaintiff skipped or underpaid several payments in the post-May 2011 period.[1] *See* Doc. No. 7-5. On January 5, 2012, Defendants sent Plaintiff correspondence stating that her monthly mortgage payment was scheduled to be adjusted on February 1, 2012. Doc. No. 23-6. According to the correspondence, the current interest rate was 9.35% and the current P&I payment $2,220.15. The correspondence further states that the new interest rate and P&I payment were the same, but that the total payment due would be $2,368.71. The difference between the current payment and the new P&I payment, $148.56, equals the $148.56 escrow payment that the correspondence lists. The March 23 Agreement provides that Plaintiff would be subject to a variable monthly escrow payment, estimating it to be $155.21. Doc. No. 23-4 § 2, at 2.

Defendants have represented that foreclosure proceedings were instituted against Plaintiff. In response, on October 5, 2012, Plaintiff filed suit in the Circuit Court for Montgomery County. Defendants removed the case on January 2, 2013. On the same day, the Clerk registered Plaintiff's Complaint. Doc. No. 2. Plaintiff asserted claims for breach of contract and misrepresentation under the MCPA. Defendants moved to dismiss on January 9, 2013. In an Opinion and Order entered on March 27, 2013, the Court granted Defendants' Motion to Dismiss and dismissed Plaintiff's claims without prejudice.

On April 18, 2013, Plaintiff filed her Amended Complaint. Doc. No. 23. Based on the foregoing factual recitation, Plaintiff asserted the following claims: (1) Count I—misrepresentation under the MCPA; (2) Count II—fraud; (3) Count III—promissory estoppel;

---

[1] These documents do not clearly show that Plaintiff failed to make mortgage payments as they are somewhat cryptic. If the case proceeds to summary judgment, Defendants will have the opportunity to correct this deficiency.

(4) Count IV—negligence; and (5) Count V—breach of contract. On May 7, 2013, Defendants filed a Motion to Dismiss. Doc. No. 25. Plaintiff filed her Response on May 29, 2013. Doc. No. 26. In her Response, Plaintiff asserts that, in two transactions dating May 3, 2010 and October 19, 2011, Defendants generally purchased all of Saxon's mortgage servicing rights. Plaintiff references a couple of SEC filings to support this assertion. However, Plaintiff does not reference these filings in her Amended Complaint or attach relevant portions of them as exhibits. *See* Doc. No. 26-1.

## II.  STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County*

*Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).[2]

## III. LEGAL ANALYSIS

### A. Breach of Contract

Under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citation omitted). "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) (citation omitted). "A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955) (citation and internal quotation marks omitted); *see also* Restatement (Second) of Contracts § 235(2) (1981) ("When performance of a duty under a contract is due any non-performance is a breach."). A breach is material where "the act failed to be performed [goes] to the root of the contract or the failure to perform [is] in respect to matters which would render the performance of the rest of the contract a thing different in substance from that which was contracted for." *Traylor v. Grafton*, 332 A.2d 651, 674 (Md. 1975). "Where . . . there has been a material breach of a contract by one party, the

---

[2] The Court relies on some documents outside of the Amended Complaint throughout this Opinion, the vast bulk of which are contractual agreements. Plaintiff refers to nearly all of these documents in the Amended Complaint and they are integral to Plaintiff's breach of contract and related claims. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (Courts may consider "documents incorporated into the complaint by reference" when ruling on a motion to dismiss.). To the extent the Court has cited documents that the Complaint does not incorporate, the Court has not relied on them to Plaintiff's detriment.

other party has a right to rescind it." *Wash. Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 382 A.2d 555, 563 (Md. 1978) (citation and internal quotation marks omitted). The corollary of this rule is that "[a] breaching party usually has no right to enforce a contract." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 524 (D. Md. 2011) (applying Utah law) (citations omitted); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 691 (7th Cir. 2011) (applying Illinois law) ("[A]nother general tenet of contract law is that plaintiffs cannot succeed on a breach of contract claim unless they demonstrate their own performance of the contract's requirements."); *Roanoke Props. Ltd. P'ship v. Dewberry & Davis*, 30 F. App'x 121, 124 (4th Cir. 2002) (applying Virginia law) (citations and internal quotation marks omitted) ("[A] party who commits the first breach of contract is not entitled to enforce the contract."); Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."); *but cf. Weichert Co. of Md., Inc. v. Faust*, 19 A.3d 393, 399 n.1 (Md. 2011) (citations omitted) (stating, in dicta, that a party may waive its right to rescind a contract by recognizing its validity in face of a material breach).

In this case, Plaintiff states a facially plausible breach of contract claim. One can plausibly infer from Plaintiff's allegations and supporting documentation that she and Saxon were parties to a series of agreements that, inter alia, provided that Plaintiff would have a monthly mortgage payment of just over $1,000 (exclusive of the escrow payment) at an interest rate of 3.00% until February 2016, and that Saxon assigned Plaintiff's rights under these agreements to Defendants in May 2011. However, Plaintiff alleges that Defendants sent her correspondence stating that her monthly mortgage payment would increase to $2,220.15 at an

interest rate of 9.35% on February 1, 2012. Although Plaintiff's allegations indicate that she made substantially inadequate mortgage payments for several months after May 2011, it is unclear that the agreements authorized Defendants to double Plaintiff's mortgage payments for this failure. It is also unclear that the agreements authorized Defendants to triple the interest rate on Plaintiff's note.[3]

Defendants argue that Plaintiff alleges the existence of an oral contract and that the Maryland statute of frauds bars the oral contract's enforcement. *See* Md. Code Ann., Real Prop. § 5-104 ("No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him."). As explained above, however, one can infer from Plaintiff's allegations and supporting documentation that the Parties executed one or more settlement agreements that incorporated the Loan Modification Agreement's terms. Furthermore, as explained in the Court's prior Opinion, a party may be able to escape the statute of limitations "by coupling the oral contract with possession, improvements to the property or partial performance." *Fraley v. Null, Inc.*, 224 A.2d 448, 452 (Md. 1966). Here, Plaintiff is in possession of the Property and Defendants have acknowledged that Plaintiff made some partial mortgage payments. Therefore, it is unclear at this point whether section 5-104 is applicable.

Defendants previously argued that there is no written contract between them and Plaintiff because the Borrowers, including co-owner Anton Bezmenova, failed to deliver properly executed documents by March 25, 2011 as per the March 23 Agreement. However, Saxon asked Plaintiff to resign the March 23 Agreement and gave Plaintiff specific instructions on how she

---

[3] Whether Plaintiff may have breached the agreements and whether this alleged breach may impact enforcement of the agreements and the extent of damages is not before the Court.

could sign on behalf of Anton Bezmenova (who is allegedly in the military and overseas). Plaintiff complied with these instructions by executing and delivering the April 4 Agreement. Although April 4 is after March 23, Saxon (and, as assignees, Defendants) plausibly waived the right to enforce the term in the March 23 Agreement purporting to allow it to reject the settlement and loan modification for untimely submission of the required documents. *Cf. Weichert*, 19 A.3d at 399 n.1 (citations omitted); Restatement (Second) of Contracts § 246(1) (1981) ("[A]n obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence . . . .").

For these reasons, the Court denies Defendants' Motion to Dismiss as to Plaintiff's breach of contract claim.

**B.     MCPA**

Under the MCPA, "[a] **person** may not engage in any unfair or deceptive trade practice" in:

> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
>
> (2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
>
> (3) The offer for sale of course credit or other educational services;
>
> (4) The extension of consumer credit;
>
> (5) The collection of consumer debts; or
>
> (6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer

debt in connection with the purchase of any consumer goods or consumer realty

from a consumer.

Md. Code Ann., Com. Law § 13-303 (emphasis added). The MCPA defines "person" to include "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other **legal or commercial entity**." *Id.* § 13-301(h) (emphasis added). The MCPA defines "unfair or deceptive trade practice[s]" to include "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13–301. Unfair or deceptive trade practices also include the "[f]ailure to state a material fact if the failure deceives or tends to deceive." *Id.* § 13–301(3).

Reliance is an element for both material misrepresentation and material omission claims under the MCPA. For material misrepresentation claims, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Mitchell*, 822 F. Supp. 2d at 533 (citations omitted). By contrast, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Id.* at 535.

Plaintiffs must plead fraud claims under the MCPA with particularity. *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010) (citations omitted). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Chubb & Son v. C & C Complete Servs., LLC*, Civil Action No. 8:12–cv–

10

01127–AW, 2013 WL 336718, at *3 (D. Md. Jan. 23, 2013) (publication forthcoming) (citation and internal quotation marks omitted).

In this case, Plaintiff fails to state a facially plausible MCPA claim. Plaintiff alleges fraud based on four statements: (1) Saxon's alleged incorrect assertion that Plaintiff failed to make her TPP payments in accordance with the TPP's terms; (2) Defendants' alleged statement that the March 23 Agreement was still in effect; (3) Defendants' sending Plaintiff a letter misstating the terms of her home loan; and (4) Defendants' failure to honor their promise to countersign the April 4 Agreement.

Statement (1) is insufficient to support an MCPA claim. First, Saxon made this alleged misrepresentation, not Defendants. This Court has consistently rejected the notion that a successor-in-interest may be liable in damages for a predecessor-in-interest's fraud because Maryland law generally does not recognize implied assignee liability. *See, e.g.*, *Onwumbiko v. JP Morgan Chase Bank, N.A.*, Civil Action No. 8:12–cv–01733–AW, 2012 WL 6019497, at *3 (D. Md. Nov. 30, 2012) (citations omitted). Second, Plaintiff failed to plead this misrepresentation with particularity. Although Plaintiff broadly identifies Saxon as the maker of the statement, Plaintiff does not allege who, precisely, made the statement; the content of the statement; the terms of the TPP; when Saxon made the statement; where Saxon made the statement; or what Saxon obtained by making the statement. Third, Plaintiff has not pleaded that she relied on this statement or otherwise explained how she could have done so.

Statement (2) is likewise deficient. Although Defendants apparently made this statement, Plaintiff failed to provide any details about the circumstances under which Defendants did so. Furthermore, the Court cannot meaningfully distinguish this statement from statement (4),

11

which, for reasons explained below, is also deficient. Additionally, Plaintiff failed to adequately plead that she relied on this statement.

Statement (3) is also insufficient. Although the letter may misstate the terms of Plaintiff's loan agreement, Plaintiff has not pleaded or explained how she relied on this statement. Plaintiff has not identified a consumer choice that this misstatement induced, and it is implausible that it could have induced any relevant choice.

Statement (4) fails as well. Although Plaintiff has adequately alleged that Defendants failed to honor their promise to countersign the April 4 Agreement, Plaintiff has not pleaded or explained how she relied on this statement. To reiterate, the mere fact that a commercial or legal entity makes a misrepresentation to a consumer is, in and of itself, insufficient to support a material misrepresentation claim under the MCPA. Rather, the plaintiff's allegations, which must be pleaded with particularity, must support a plausible inference that the statement induced the plaintiff to make a harmful consumer choice. Plaintiff's vague allegations fail to satisfy this standard.

For these reasons, Plaintiff's MCPA claim fails as a matter of law.[4]

**C.    Fraud**

Plaintiff's fraud claim fails for the same reasons that her MCPA claim fails. *See* Part III.B, *supra*. All the same, the Court adds a few supplemental remarks. Fraudulent misrepresentation claims are generally more difficult to plead and prove than MCPA misrepresentation claims. In contrast to an MCPA misrepresentation claim, the plaintiff must plead and prove, inter alia, the following elements to prevail on a fraud claim: (1) knowledge of the falsity of the statement; (2) intent; (3) and *justifiable* reliance. *See Mitchell*, 822 F. Supp. 2d

---

[4] Plaintiff has not alleged or argued that Defendants made a misleading omission in violation of the MCPA and, even had she, the claim would have failed for the reasons stated above.

at 536–37 (setting forth the elements of fraud); *id.* at 532 (stating that the threshold for pleading and proving reliance under the MCPA is "relatively low"). Furthermore, in contrast to MCPA misrepresentation claims, plaintiffs must prove fraud claims by clear and convincing evidence. *See id.* at 536–37 (citations omitted). If one cannot infer, by a preponderance of the evidence, from Plaintiff's allegations that she relied on a deceptive or unfair misrepresentation to her detriment, *see Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citation omitted), it follows a fortiori that one cannot infer, by clear and convincing evidence, that Defendants defrauded Plaintiff. Plaintiff also argues that Saxon failed to adhere to the TPP incident to a scheme to delay the processing of her request for a mortgage modification to induce her to refrain from filing suit to protect her contractual rights. Although deliberately "churning" a request for a loan modification to "run up late fees and other default-related charges" could conceivably support an MCPA claim, *see Currie v. Wells Fargo Bank, N.A.*, Civil Action No. 8:12–cv–02461–AW, 2013 WL 2295695, at *6 (D. Md. May 23, 2013), Plaintiff has not alleged a long pattern of deceptive of conduct such as in *Currie*. Furthermore, Plaintiff has not adequately pleaded the elements of a common law fraud claim, including that of justifiable reliance. Indeed, Plaintiff alleges that she eventually filed suit against Saxon. Finally, this allegation pertains to Saxon, not Defendants. Accordingly, Plaintiff's fraud claim lacks merit.

**D.     Negligence**

The Court rejects Plaintiff's negligence claim outright. Plaintiff has bootstrapped her negligence claim onto her breach of contract claim. As this Court recently held in *Currie*, "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." 2013 WL 2295695, at *12

(citations and internal quotation marks omitted). This case, like *Currie*, "presents a typical, arm's-length creditor/debtor relationship founded on a mortgage loan." *Id.* As in *Currie*, Plaintiffs have not identified any contractual language purporting to place a special duty of care on Defendants and have not alleged any extraordinary circumstances counseling for the imposition of a tort duty." *Id.* (citation and internal quotation marks omitted). "Therefore, although Plaintiff[] may stand in contractual privity with Defendants, the alleged nexus is insufficiently intimate to warrant the imposition of a tort duty." *Id.* (citation and internal quotation marks omitted). Consequently, the Court dismisses Plaintiff's negligence claim.

E.  **Promissory Estoppel**

The Court has carefully reviewed the pleadings and the Parties' memoranda and is satisfied that Plaintiff has stated a facially plausible promissory estoppel claim regarding Defendants' alleged promise to countersign the April 4 Agreement. *See generally Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (stating the elements of promissory estoppel).

Defendant argues that Plaintiff's promissory estoppel claim fails because an Agreement covers the underlying dispute. *See Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) (citation and internal quotation marks omitted) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."). As indicated, however, this rule is merely "general" and does not apply "where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002); *see also* Fed. R. Civ. P. 8(d)(2)("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically,

14

either in a single count or defense or in separate ones."). Defendants also argue that the promissory estoppel claim fails because Saxon made the alleged promise, not Defendants. This argument overlooks Plaintiff's allegation that Saxon assigned its interest in the loan to Defendants. Although an assignee generally may not incur damages liability for the fraud of a predecessor-in-interest, a plaintiff may rely on the promise of a predecessor-in-interest to establish the existence or terms of the assigned agreement.

**F.     Other**

Plaintiff asserts in her Response that Defendants entered into a purchase agreement with Saxon whereby they generally purchased all of Saxon's mortgage servicing rights. Plaintiff further asserts that "successors in [an] MSR-related transaction are liable for the obligations of the predecessors." Doc. No. 26 at 3. Plaintiff adds that Defendant may be responsible for the liabilities of Saxon pursuant to the de facto merger doctrine. Although Plaintiff's arguments are somewhat unclear, the Court assumes that she means that the contractual relationship between Defendants and Saxon may provide a basis for imputing the alleged fraud of Saxon to Defendants. The Court will not allow discovery on this question because, despite two opportunities to do so, Plaintiff has not alleged the existence of such a relationship.[5] Second, as explained in Parts III.B–C, one cannot plausibly infer from Plaintiff's allegations that *Saxon* violated the MCPA or committed fraud. This is a breach of contract case, and discovery shall be limited to this and the related promissory estoppel claim.

---

[5] Plaintiff references a couple of SEC filings in her Response. However, Plaintiff does not reference these filings in her Amended Complaint or attach relevant portions of them as exhibits. *See* Doc. No. 26-1. Furthermore, the Court is reluctant to take judicial notice of such matters. *Cf. Lawson v. MERS*, Civil Action No. 8:13–cv–01301–AW, 2013 WL 2444141, at *3 (D. Md. June 4, 2013) ("[T]he Court is hesitant to take judicial notice of the fact that Bank of America assumed the Note through its apparent merger with Countrywide.").

Defendants assert that Plaintiff failed to join the co-owners of the Property, Anton Bezmenova and Leonid Finkelshteyn, and that these individuals are required parties under Rule 19 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 19(a)(1). Plaintiff does not challenge this assertion. Therefore, the Court orders Plaintiff to join Anton Bezmenova and Leonid Finkelshteyn as co-Plaintiffs. *See* Fed. R. Civ. P. 19(a)(2).[6]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. A separate Order follows. The Court will issue a Scheduling Order.

| July 23, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[6] At the end of her Response, Plaintiff briefly requests the Court for leave to join Deutsche Bank National Trust Company as a co-Defendant. This request will have to be made via formal motion.